A. PUNDERSON vs. G. H. LOVE — Appeal from Brazos County.

Without a statement of *all* the evidence, this court will not undertake to investigate the merits of the cause.

Under the plea of "not guilty," in an action of trespass to try title, the defendant is at liberty to give in evidence special matter of defense. [11 Tex. 662; 16 Tex. 563; 25 Tex. 271.]

It is the duty of the appellant, not of the appellee, to see that the record is properly brought up for revision in this court.

A judgment is not to be reversed for every irregularity, or error, in mere matters of form not affecting the rights of the parties, or the merits of the controversy.

Until the contrary appear, it will be presumed that the court below acted, in all things, rigutly. [2 Tex. 581, 594; 7 Tex. 463; 13 Tex. 394; 28 Tex. 263.]

The facts of this case are stated, in the opinion of the court, as far as the reporters are able to give them. The originals of the several exhibits used as testimony at the trial, and referred to in the opinion, were sent up to this court by the order of the district judge (except exhibit X), and were not copied in the transcript of the record. These originals have since been withdrawn, by the permission of the court, and cannot now be referred to for the purpose of giving a more detailed statement of the case.

A. M. LEWIS and RIVERS for appellant.

WEBB for appellee.

Opinion of the court delivered by Mr. Justice WHEELER:

This suit was instituted by the appellant to try the title and recover of the appellee the possession of a tract of land.

The defendant first filed a general denial, and subsequently an " amended answer," in which he alleges that he entered, and is now settled upon a certain tract of land, in good faith, believing the same to be vacant, and has made valuable improvements thereon; that his entry was made in 1842, agreeably to law, but was not surveyed until 1848 in consequence of a vacancy in the office of county surveyor — concluded by making an exhibit of his field notes, and claiming the benefit of all laws enacted for the benefit of settlers in good faith.

The trial involved a controversy as to boundaries.

It appears from a bill of exceptions taken by the plaintiff, that the defendant offered in evidence a certificate marked X (not embraced in the transcript or sent up with the record), and also three several surveys made by the county surveyor, and proved by him and one of the chain carriers, which surveys are made a part of the bill of exceptions and marked E, G and H; to the introduction of which the plaintiff objected, but the court overruled the objection.

There was a verdict, a motion for a new trial overruled, and judgment for the defendant; from which the plaintiff appealed.

By order of the court the original papers, used on the trial of the cause, were sent up with the transcript of the record.

There is in the record no statement of facts, and hence, so much of the argument as proceeds upon the supposition that we have the evidence before us, and can revise the finding upon the merits, it will not be necessary particularly to notice. Nothing can be more clear than that, without a statement of all the evidence, we cannot undertake to investigate the merits and determine to whom the land in controversy belongs.

The only question which is presented for revision by the record is, as to the propriety of the ruling of the court, presented by the bill of exceptions. In this ruling we can perceive no error. The various surveys, admitted in evidence, appear to have been made by the proper officer, and to have been duly

proved. They expressly relate to and tend to establish the boundaries of the land in controversy. *Prima facie*, therefore, they were admissible. They may have been rebutted and their force repelled by other evidence, but it is difficult to perceive any legal ground upon which their *admissibility* could have been contested.

But if the certificate and field notes, embraced in the exceptions, did not, as separate links in the chain of evidence, upon their face, appear to have been admissible, yet, they may have been so connected and identified with other evidence not brought up in the record as to have been admissible and most material evidence in the case. The act of 1844, p. 70, sec. 5, seems to have contemplated that under the plea of "not guilty" in this action, the defendant should be at liberty to give in evidence special matter in his defense, and if, in any aspect of the case, these surveys could have been appropriate to his defense, they certainly were admissible. That they may have been so appropriate, either to rebut the plaintiff's evidence of title to the particular lands in question, or to support some matter of defense relied on and available under the pleadings, is sufficiently apparent.

It is insisted that the court should have sustained the objection to the introduction of the paper marked A, because there were filed in the cause four other papers marked A. What relevancy or pertinency that fact could have to the plaintiff's right to give in evidence any particular paper, or to adduce proof of any particular fact, it is, indeed, difficult. to perceive. That the paper may have been made an exhibit in the pleadings unnecessarily, was a matter wholly immaterial, and in no way affecting its admissibility in evidence, since the objection did not present any question of variance between the evidence and pleadings.

That the paper, designated in the bill of exceptions by the letter X, is not sent up in the transcript, cannot be ascribed to the fault of the appellee. Nor is it his fault that the court has seen fit, at the instance of the appellant, to send up some of the original papers in the cause. The appellee surely ought not to

be visited with all the costs of this proceeding, and the expense and vexation of another trial in consequence of the gratuitous acts of others in which he has not participated, and when he has himself committed no fault. It is the duty of the appellant, not of the appellee, to see that the record is properly brought up and presented here for revision.

But the presumption is, that a case was presented to the court below, which made it proper for the judge to make the order by which some of the original papers are before us. We understand the rule of this court, upon that subject, to be directory, and not so arbitrary and inflexible as to overbear every consideration affecting the justice and law of the case. We do not understand the law to be, that for every irregularity or error, in mere matters of form, not affecting in any way the rights of the parties, or the merits of the controversy, the judgment is of necessity to be reversed and annulled. Until the contrary appear, we must presume the court below acted in all things rightly, and we presume the fact to be, that the original papers were sent up at the instance of the appellant, and with the assent of the opposite party. Such was understood to be the statement and admission of counsel, when the case was at bar, and we know of no law which will authorize a reversal of the judgment for this cause. The parties have acquiesced in the propriety of the order. No objection to it has been made in either court, but on the contrary, the counsel on both sides concur in regarding it as entirely proper under the circumstances of this case, and owing to the difficulty, if not impossibility, of obtaining correct transcripts of some of the field notes and surveys in evidence upon the trial.

It does not seem to have occurred to the appellant's counsel, that this order, made at their instance, can be invoked by them as a ground for reversing the judgment; and it would indeed be novel for the court, *mero motu*, to reverse the judgment for this cause when the order was thus confessedly made at the instance of the appellant, and when the parties both concurred, and still acquiesce, in its entire propriety.

We have inspected the record and find no error, nothing on

which to predicate a reversal of the judgment. If the plaintiff has rights which he has been so unfortunate as to have failed to present in this record, he will still have the period prescribed by the statute, within which to bring a new action; and as he, being the appellant, is the party alone responsible for the absence of a more intelligible and perfect record, we do not conceive that any injustice will be done him by an affirmance of the judgment.

It is the opinion of the court that the judgment be affirmed.

In this case Mr. Justice LIPSCOMB delivered the following dissenting opinion:

This suit was brought by the appellant to recover a tract of land to which he claimed title, derived from Thomas W. Blakey, it being part of the league granted as a headright to the said Blakey by the government of Mexico, and the controversy seems to have been, whether the land sued for was embraced within Blakey's league or not.

From the manner in which the record has been sent up, it is difficult to understand what was the evidence, or what was decided in the court below. The bill of exceptions refers to original papers, a considerable file of which have been sent up under the following order of the judge:

" It is further ordered by the court, that that the clerk of this court send up to the supreme court all the original papers used as evidence by each party."

It is evident that this court, having appellate jurisdiction only in this case, cannot pass in judgment on the papers so sent up, because it does not appear that they compose a part of the record, nor does it appear what, if any, judgment has been passed on them by the court below.

The order for their transmission was in direct contravention of rule 5, adopted by this court at the December term, 1846. There was a bill of exceptions, from which it appears that the defendant offered in evidence a certificate marked X, objected to by the plaintiff, and the objection overruled by the court. No such certificate, marked X, is to be found in the record, nor in the original papers. The bill of exceptions further shows

that three several surveys, made by the county surveyor, marked E, G and H, were given in evidence by the defendant and objected to by the plaintiff, but the objection overruled; and it states that they were made exhibits in the defendant's plea. In the record of the plea but one is referred to, and it is designated as exhibit A, and each of the three surveys, sent up as original papers, is marked A. There is so much uncertainty about these papers, that, even if we were disposed to treat them as records of the case, it would be impossible to understand what point was presented by them, or what was the decision of the court on their legal effect. It is usual, when the record is so defective as not to show error affirmatively, to hold the appellant responsible, particularly if he had been the plaintiff below, and to let the judgment stand. But, inasmuch as the court below erred in sending up the original papers, I believe we are bound to send the case back, because the court below had no right or power to order the original papers to be sent up to this court, whatever may have been the wishes of the parties on the subject.

The 5th rule is explicit. "No original paper used in the court below shall be sent up as a part of the record, unless it is specially ordered to be sent up by the supreme court." This is a salutary rule for the protection of the original papers. In this case, valuable private papers, belonging to third persons, have been sent up to this court, exposing the owners to much trouble, and perhaps irretrievable loss, without any sufficient guarantee against such loss.

It is objectionable, too, in this: that it leaves the matter to the clerk to decide what papers had been used on the trial, and would open an investigation in this court as to whether they had been used or not. It is true that sometimes, though rarely, an original paper might be required in this court. The court below is sometimes called upon to decide for inspection, on the reading or on the execution of an instrument. The first it would be most proper to decide on the evidence of experts; in the latter the judge would be called upon to decide on his own inspection. Should his judgment be under revision, the pres-

ence of the paper would be required in the appellate court. In such cases, the party appealing would only, under the rule before cited, have to procure the order of the supreme court to have it sent up; and in the order the rights of third persons would, no doubt, be sufficiently guarded and protected.

If the original papers had been made a part of the record, and shown in what way, or for what purpose, they had been used, I am not prepared to say but there was error in the admission of some of them. One of the surveys, certified to by the county surveyor, is for a league of land for Blakey, starting at the starting point of the original survey and field notes of his grant, but wholly disregarding the metes and bounds of his survey, and running out the quantity called for. If this paper went to the jury without any direction from the judge, it was well calculated to mislead the jury, and induce them to believe that they must be governed by the quantity, regardless of the designated metes and bounds of the grant; and when so run, if it did not include the land in controversy, they must find for the defendant. This, as a general proposition, I have no hesitation in saying was error; as designated metes and bounds must govern both courses and distances. I do not consider the fact that the error, if any, growing out of the order for the transmission of the original papers, not being the fault of the appellee, but of both parties, or of the judge, and consequently he ought not to be taxed with the cost, as entitled to any weight. It often occurs that a party suffers by the error of the judge, and in this case I think the judge erred in ordering the original papers sent up.